UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| PHILIP WALSH, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 4:18-CV-511-ERW |
| | ) |
| ANDREW M. SAUL, Commissioner | ) |
| of Social Security,[1] | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM AND ORDER

This is an action under Title 42 U.S.C. §§ 405(g) and 1383(c)(3) for judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying the applications of Philip Walsh ("Plaintiff") for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401, *et seq*. and Supplemental Security Income ("SSI") under Title XVI of the Act, 42 U.S.C. §§ 1381, *et seq.* Plaintiff has filed a brief in support of the Complaint (ECF No. 16) and Defendant has filed a brief in support of the Answer (ECF No. 23).

### I. Procedural History

Plaintiff filed his application for DIB under Title II of the Social Security Act on October 10, 2014 and an application for SSI under Title XVI of the Act on December 4, 2014. (Tr. 12, 186-94) Plaintiff claimed he became disabled on October 1, 2014[2] because of bipolar mood disorder, type I, hypomania; generalized anxiety disorder; hypertension; and high cholesterol.

---

[1] Andrew M. Saul is now the Commissioner of Social Security. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Andrew M. Saul should be substituted for Acting Commissioner Nancy A. Berryhill as the Defendant in this suit. No further action needs to be taken to continue this suit by reason of the last sentence of Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

[2] Plaintiff amended his alleged onset date to October 1, 2014 during his initial hearing held on September 29, 2016. (Tr. 12, 211)

(Tr. 84) Plaintiff was initially denied relief on November 5, 2014.[3] (Tr. 70-87) At Plaintiff's request, a hearing was held before an Administrative Law Judge ("ALJ") on September 29, 2016, at which Plaintiff and a vocational expert testified. (Tr. 32-43, 89-91) The ALJ requested additional medical evaluations and later held a supplemental hearing on April 26, 2017. (Tr. 44-64) Plaintiff, a vocational expert, and two medical experts testified at the hearing. By decision dated June 19, 2017, the ALJ found Plaintiff was not disabled. (Tr. 12-26) On February 22, 2018, the Appeals Council denied Plaintiff's request for review of the ALJ's decision. (Tr. 1-6) Thus, the ALJ's decision stands as the final decision of the Commissioner.

In this action for judicial review, Plaintiff claims the ALJ's decision is not supported by substantial evidence on the record as a whole. Specifically, Plaintiff argues: (1) the ALJ erred in determining Plaintiff's RFC by failing to properly consider all the evidence of the record and its consistency; and (2) the hypothetical question to the vocational expert based on the RFC determination was flawed such that the vocational expert testimony did not support the ALJ's decision.

For the reasons that follow, the Commissioner's final decision is supported by substantial evidence on the record as a whole, and the Court affirms the decision.

## II. Medical Records and Other Evidence before the ALJ

As stated in his disability application, Plaintiff indicated he last worked as a certified medical technician in April 2008. (Tr. 226) In a disability report, Plaintiff claimed he could not work at a fast food restaurant because the job did not pay enough, and the stress of people was too much to handle. (Tr. 278) Plaintiff completed a function report and stated he could clean the

---

[3] Plaintiff's claim for DIB was denied on November 5, 2014, and he subsequently filed a request for a hearing on December 4, 2014. That same date, Plaintiff filed his application for SSI. The Social Security Administration escalated Plaintiff's SSI application to the hearing level and associated the application with Plaintiff's previously-filed DIB application. (Tr. 12)

house, take care of his son, prepare meals, and do laundry. (Tr. 258, 259) He further stated he did not perform yard work, but went outside daily, drove, and shopped in stores once a week. (Tr. 260) However, he indicated that he was unable to pay bills because of his tendency to forget. (Tr. 260) As part of Plaintiff's disability application, state agency psychologist, Joan Singer, Ph.D., reviewed the medical records. Dr. Singer stated Plaintiff had mild restrictions of daily living and moderate difficulties in maintaining social functioning, concentration persistence, and pace. (Tr. 73)

On August 13, 2014, Jhansi Vasireddy, M.D., examined Plaintiff for complaints of anxiety and mood swings. Plaintiff stated he stopped his medication a year earlier. (Tr. 314) Dr. Vasireddy prescribed Depakote and Klonopin. (Tr. 315) On mental status examination, Plaintiff was cooperative with good eye contact, maintained good hygiene, and had fair insight and judgment. (Tr. 315-316) Plaintiff returned to Dr. Vasireddy on September 10, 2014, and he reported the medication was helping and he felt good with no mood swings. (Tr. 312) In July and August 2015, Plaintiff followed up with Dr. Vasireddy. Plaintiff reported having marital problems and stated he cut his throat while intoxicated, which resulted in a five-day hospitalization in the psych unit. He stated he lost his job as medical technician and drug counselor because he "fell off the wagon," but he was doing well on medications, which included lithium, Seroquel XR, and Klonopin. (Tr. 343-44, 351) Dr. Vasireddy observed Plaintiff was stable, alert and oriented, pleasant, and cooperative. (Tr. 344)

Between June 2015 and January 2016, Plaintiff saw Quentin Chambers, a mental health nurse practitioner. Plaintiff explained he had anxiety but wanted to continue his medication because it helped. (Tr. 385-87) Nurse Chambers generally observed Plaintiff was oriented, cooperative, pleasant, and polite, with good eye contact, normal hygiene, logical thought flow, normal energy, and fair memory. His insight and judgment were poor. (Tr. 385, 387, 389, 391,

3

393, 394) Nurse Chambers increased Plaintiff's lithium prescription but denied requests to increase Clonazepam. (Tr. 396) Plaintiff expressed a desire to find a psychiatrist who would prescribe more Clonazepam. (Tr. 397)

Between February and May 2016, Plaintiff saw Ivy Alwell, an advanced nurse practitioner. Plaintiff stated his medications helped and that he was happier with a better mood. (Tr. 460) Nurse Alwell reported that Plaintiff was alert, oriented, and cooperative with good focus and concentration. (Tr. 457, 459) She declined Plaintiff's request for an early refill of his Klonopin prescription on May 24, 2016. (Tr. 458) Laboratory tests indicated Plaintiff was positive for some questionable benzodiazepine and opiate levels. (Tr. 464)

Plaintiff met with his community case manager Patsy Gilbo between June and August 2016 and informed her that he was trying to get disability so he could pay his mother back. He was feeling good, taking regular walks, and attending AA meetings. (Tr. 346, 349, 536) Plaintiff stated he took care of his son and wanted to enjoy every moment. He had some anxiety when there was pressure on him to handle things. (Tr. 331) He reported that his medications and exercise helped, and he felt as though he was gaining control. (Tr. 338, 341, 346, 349) He also attended church and prayer group every week. (Tr. 346, 536)

In August 2016, Dr. Vasireddy completed a mental residual functional capacity questionnaire. Dr. Vasireddy noted Plaintiff had no side effects from his prescribed medications, displayed slightly pressured speech, and had a fair prognosis. However, Dr. Vasireddy did not check any boxes pertaining to Plaintiff's signs and symptoms, and she did not assess any of Plaintiff's mental abilities to work. (Tr. 379-83)

Between September 2016 and October 2016, Plaintiff again met with Ms. Gilbo. She noted that Plaintiff went for walks, attended appointments, and shopped in stores. (Tr. 532) Plaintiff stated he "has been doing alright," his recent medication adjustments were helping, and

he was leading AA meetings. He worried about his disability getting approved because he wanted to start helping his mother. (Tr. 526, 532)

On October 26, 2016, Jerry Cunningham, Psy.D., performed a consultative mental diagnostic evaluation of Plaintiff at the request of Disability Determinations. (Tr. 408-16) Plaintiff acknowledged his medication helped, and he got along well with people and coworkers. (Tr. 408-09, 411) His visual hallucinations improved in that he used to see mice but currently only saw roaches. (Tr. 408) Plaintiff reported being hospitalized last year for a suicide attempt. (Tr. 409) Mental status examination revealed adequate hygiene, normal eye contact, a "pretty good and decent" mood, and cooperative/adequate effort. (Tr. 411) Plaintiff reported an ability to take care of his personal hygiene, do household chores, cook meals, and go shopping. He was stabilized on medication, and Dr. Cunningham opined Plaintiff may be able to perform work tasks and have sustained concentration on basic tasks. However, Dr. Cunningham suggested Plaintiff did not have the capacity to cope with the cognitive demands of basic work-like tasks, and he could not complete work-like tasks within an acceptable timeframe due to mania and hypomania. (Tr. 415)

On November 6, 2016, Dr. Cunningham completed a mental medical source statement form. He stated Plaintiff had no restrictions in understanding, remembering, and carrying out simple instructions. He had mild restrictions in his ability to make judgments on simple work-related decisions, as well as understanding, remembering, and carrying out complex instructions. Additionally, Plaintiff had only mild restrictions in his ability to interact appropriately with the public, supervisors, and co-workers. However, Dr. Cunningham opined Plaintiff did have moderate restrictions in his ability to make judgments on complex work-related decisions and his ability to respond appropriately to usual work situations and changes in a routine work setting. Dr. Cunningham qualified his opinion by explaining that these restrictions are only present when

5

Plaintiff was manic or severely depressed. Further, while medications were starting to stabilize Plaintiff's extreme moods, he continued to have some anger issues to work through. (Tr. 417-20)

Plaintiff followed-up with Dr. Vasireddy on November 22, 2016 and January 23, 2017. Plaintiff reported he was doing very well on his current medication. (Tr. 499-504) Dr. Vasireddy observed Plaintiff was alert, oriented, pleasant, and cooperative, with good hygiene, good eye contact, euthymic mood and affect, goal directed thought process, and fair insight and judgment. He reported seeing roaches off and on. (Tr. 500-03) Between November 2016 and February 2017, Plaintiff again met with Ms. Gilbo. He reported staying busy with his appointments and meetings, including chairing AA meetings, going to church, and taking care of his son. (Tr. 513-524)

Joseph Carver, Ph.D. testified at the second administrative hearing. Based upon his review of the medical records, Dr. Carver explained Plaintiff's anxiety and alleged hallucinations were more likely associated with medication affect. Reports of mania appeared more consistent with drugs or alcohol, as there were no reports of mania since 2015 when Plaintiff stated he stopped alcohol and drug use. Dr. Carver testified Plaintiff had no impairment in understanding, remembering, and applying information. Plaintiff had a mild impairment in his ability to interact with others, and a moderate impairment in his ability to concentrate, persist, and maintain pace. Plaintiff had no problem in the area of adapting and managing oneself based on his ability to work independently, go to meetings, take extensive walks, and be a home parent. Further, Dr. Carver saw no evidence of an anxiety condition, explaining that while Plaintiff reported anxiety, he still went into the community without difficulty and exhibited no problems commonly associated with high levels of anxiety. Dr. Carver explained, while Dr. Cunningham appeared to

6

restrict Plaintiff to only complex work-related activities, Plaintiff would only have mild issues in understanding instructions in a job setting. (Tr. 55-59)

During the second administrative hearing the ALJ posed a hypothetical to the vocational expert ("VE"). The ALJ described an individual with the age, education, and work experience as the Plaintiff, an perform work with no exertional restrictions, but with limitations from affective mood disorders that would restrict work activity to simple, routine, and repetitive tasks. Based on this hypothetical, the VE testified that the hypothetical individual could not perform Plaintiff's past relevant work but was able to perform unskilled jobs available in significant numbers in the national economy, including laundry worker, packager, and dining room attendant. However, if the individual had a diagnosis of generalized anxiety disorder and would be off-task twenty percent of the time, competitive work would be unavailable. (Tr. 60-61)

### III. Discussion

#### A. <u>Legal Standard</u>

To be eligible for disability insurance benefits under the Social Security Act, Plaintiff must prove he is disabled. *Pearsall v. Massanari,* 274 F.3d 1211, 1217 (8th Cir. 2001); *Baker v. Secretary of Health & Human Servs.,* 955 F.2d 552, 555 (8th Cir. 1992). The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). An individual will be declared disabled "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A).

Under the Social Security Act, the Commissioner has established a five-step process for determining whether a person is disabled. 20 C.F.R. §§ 416.920(a), 404.1520(a). "'If a claimant fails to meet the criteria at any step in the evaluation of disability, the process ends and the claimant is determined to be not disabled.'" *Goff v. Barnhart*, 421 F.3d 785, 790 (8th Cir. 2005) (quoting *Eichelberger v. Barnhart*, 390 F.3d 584, 590–91 (8th Cir. 2004)). First, the claimant must not be engaged in "substantial gainful activity." 20 C.F.R. §§ 416.920(a), 404.1520(a).

Second, the claimant must have a "severe impairment," defined as "any impairment or combination of impairments which significantly limits [claimant's] physical or mental ability to do basic work activities." 20 C.F.R. §§ 416.920(c), 404.1520(c). "'The sequential evaluation process may be terminated at step two only when the claimant's impairment or combination of impairments would have no more than a minimal impact on [his] ability to work.'" *Page v. Astrue*, 484 F.3d 1040, 1043 (8th Cir. 2007) (quoting *Caviness v. Massanari*, 250 F.3d 603, 605 (8th Cir. 2001)).

Third, the claimant must establish his impairment meets or equals an impairment listed in the Regulations. 20 C.F.R. §§ 416.920(d), 404.1520(d). If the claimant has one of, or the medical equivalent of, these impairments, then the claimant is per se disabled without consideration of the claimant's age, education, or work history. *Id.*

Before considering step four, the ALJ must determine the claimant's residual functional capacity (RFC). 20 C.F.R. §§ 404.1520(e), 416.920(e). RFC is defined as "the most a claimant can do despite [his] limitations." *Moore v. Astrue*, 572 F.3d 520, 523 (8th Cir. 2009) (citing 20 C.F.R. § 404.1545(a)(1)). At step four, the ALJ determines whether the claimant can return to his past relevant work by comparing the claimant's RFC with the physical and mental demands of the claimant's past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1520(f), 416.920(a)(4)(iv), 416.920(f); *McCoy v. Astrue*, 648 F.3d 605, 611 (8th Cir. 2011). If the

claimant can still perform past relevant work, he will not be found to be disabled; if the claimant cannot, the analysis proceeds to the next step. *McCoy*, 648 F.3d at 611.

At step five, the ALJ considers the claimant's RFC, age, education, and work experience to see if the claimant can make an adjustment to other work in the national economy. 20 C.F.R. §§ 416.920(a)(4)(v). If the claimant cannot make an adjustment to other work, then he will be found to be disabled. 20 C.F.R. §§ 416.920(a)(4)(v), 404.1520(a)(4)(v). Through step four, the burden remains with the claimant to prove he is disabled. *Brantley v. Colvin*, No. 4:10CV2184 HEA, 2013 WL 4007441, at *3 (E.D. Mo. Aug. 2, 2013) (citation omitted). At step five, the burden shifts to the Commissioner to establish the claimant maintains the RFC to perform a significant number of jobs within the national economy. *Id.* "The ultimate burden of persuasion to prove disability, however, remains with the claimant." *Meyerpeter v. Astrue*, 902 F. Supp. 2d 1219, 1229 (E.D. Mo. 2012) (citations omitted).

The Court must affirm the Commissioner's decision if it is supported by substantial evidence on the record as a whole. 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Estes v. Barnhart*, 275 F.3d 722, 724 (8th Cir. 2002). Substantial evidence is less than a preponderance but enough that a reasonable person would find it adequate to support the conclusion. *Johnson v. Apfel*, 240 F.3d 1145, 1147 (8th Cir. 2001). Determining whether there is substantial evidence requires scrutinizing analysis. *Coleman v. Astrue*, 498 F.3d 767, 770 (8th Cir. 2007).

The Court must consider evidence which supports the Commissioner's decision as well as any evidence that fairly detracts from the decision. *McNamara v. Astrue*, 590 F.3d 607, 610 (8th Cir. 2010). If, after reviewing the entire record, it is possible to draw two inconsistent positions and the Commissioner has adopted one of those positions, the Court must affirm the Commissioner's decision. *Anderson v. Astrue*, 696 F.3d 790, 793 (8th Cir. 2012). The Court

may not reverse the Commissioner's decision merely because substantial evidence could also support a contrary outcome. *McNamara*, 590 F.3d at 610.

**B. The ALJ's Decision**

The ALJ's Decision conforms to the five-step process outlined above. The ALJ found Plaintiff met the insured status requirements of the Social Security Act through March 31, 2016, and he had not engaged in substantial gainful activity since October 1, 2014, the amended onset date. (Tr. 14) The ALJ found Plaintiff's bipolar disorder was a severe impairment, but this impairment did not meet or medically equal a listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 14)[4] Specifically, the ALJ analyzed Plaintiff's eligibility for Listing 12.04 (Affective Disorder).

The ALJ found Plaintiff had the RFC to perform a full range of work at all exertional levels except Plaintiff "can perform no more than simple, routine, and repetitive tasks." (Tr. 19) In making this finding, the ALJ summarized the relevant medical records, as well as Plaintiff's own statements regarding his abilities, symptoms and activities of daily living. While the ALJ found Plaintiff's medically determinable impairments could reasonably be expected to cause his alleged symptoms, the ALJ further determined Plaintiff's statements about the intensity, persistence and limiting effects of the symptoms were not entirely consistent with the medical and other evidence in the record. (Tr. 23)

---

[4] The ALJ additionally found Plaintiff's hypertension, high cholesterol, gastroesophageal reflux disease ("GERD"), reported history of carpal tunnel surgery, history of pelvis sprain and right inguinal hernia, history of obesity, history of lumbar spondylosis, history of polysubstance dependence, and history of anxiety were non-severe. (Tr. 5-18) Plaintiff does not challenge the physical findings. Further, Plaintiff states in his brief, "Plaintiff takes no issue with the decision finding plaintiff's anxiety disorder and/or panic attacks were not a severe impairment, and do not play a role in assessment of residual functional capacity in this particular matter based upon this record." (Pl.'s Brief in Support of Compl. p. 20, ECF No. 16)

The ALJ determined Plaintiff was unable to perform any of his past relevant work. However, based on his age, education, work experience, RFC, and VE testimony, the ALJ concluded Plaintiff could perform work existing in significant numbers in the national economy, and specifically, as a laundry worker, hand packager, and dining room attendant. (Tr. 25) The ALJ therefore found Plaintiff was not under a disability from October 1, 2014, the amended onset date, through the date of the decision. (Tr. 25)

C. **Analysis of Issues Presented**

In his initial brief to this Court, Plaintiff argues: (1) the ALJ erred in determining Plaintiff's RFC by failing to properly consider all the evidence of record and its consistency; and (2) the hypothetical question to the vocational expert based on the RFC determination was flawed such that the vocational expert testimony did not support the ALJ's decision. The Court addresses each of Plaintiff's proffered issues below.

1. **The ALJ erred in determining Plaintiff's RFC by failing to properly consider the evidence of record**

Plaintiff claims the ALJ erred in his RFC assessment because the ALJ failed to consider all the evidence of the record and failed to consider the consistency of the evidence. Specifically, Plaintiff argues the ALJ erred in affording Dr. Carver's opinion greater weight than the opinion of Dr. Cunningham in formulating Plaintiff's RFC.

A claimant's RFC is the most he can do, despite his physical or mental limitations. *Masterson v. Barnhart*, 363 F.3d 731, 737 (8th Cir. 2004). The ALJ bears the primary responsibility for assessing a claimant's RFC based on all relevant evidence in the record, including medical records, the observations of treating physicians and others, and the claimant's own description of his symptoms and limitations. *Goff*, 421 F.3d at 793; *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004); 20 C.F.R. §§ 404.1545(a), 416.945(a).

Accordingly, when determining a claimant's RFC, the ALJ must necessarily evaluate the consistency of the claimant's subjective complaints with the evidence of record. *Wagner v. Astrue*, 499 F.3d 842, 851 (8th Cir. 2007); *Tellez v. Barnhart*, 403 F.3d 953, 957 (8th Cir. 2005). In addition, because a claimant's RFC is a medical question, "the ALJ should obtain medical evidence that addresses the claimant's ability to function in the workplace." *Hutsell v. Massanari*, 259 F.3d 707, 712 (8th Cir. 2001) (internal quotation marks and citation omitted). Some medical evidence must support the ALJ's RFC determination. *Vossen v. Astrue*, 612 F.3d 1011, 1016 (8th Cir. 2010); *Hutsell*, 259 F.3d at 711-12. "However, the burden of persuasion to prove disability and demonstrate RFC remains on the claimant." *Vossen*, 612 F.3d at 1016.

For purposes of social security analysis, a "symptom" is an individual's own description or statement of his physical or mental impairment(s).[5] SSR 16-3p, 2017 WL 5180304, at *2 (Soc. Sec. Admin. Oct. 25, 2017) (republished). If a claimant makes statements about the intensity, persistence, and limiting effects of his symptoms, the ALJ must determine whether the statements are consistent with the medical and other evidence of record. *Id.* at *8.

When evaluating a claimant's subjective statements about symptoms, the ALJ must consider all evidence relating thereto, including the claimant's prior work record and third party observations as to his daily activities; the duration, frequency and intensity of the symptoms; any precipitating and aggravating factors; the dosage, effectiveness and side effects of medication; and any functional restrictions. *Halverson v. Astrue*, 600 F.3d 922, 931 (8th Cir. 2010); *Polaski*

---

[5] The Social Security Administration issued a new ruling that eliminates the use of the term "credibility" when evaluating a claimant's subjective statements of symptoms, clarifying that "subjective symptom evaluation is not an examination of an individual's character." SSR 16-3p, 2017 WL 5180304, at *2 (Soc. Sec. Admin. Oct. 25, 2017) (republished). The factors to be considered in evaluating a claimant's statements, however, remain the same. *See id.* at *13 ("Our regulations on evaluating symptoms are unchanged."). *See also* 20 C.F.R. §§ 404.1529, 416.929. This new ruling applies to final decisions of the Commissioner made on or after March 28, 2016.

*v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984). If the ALJ finds the statements inconsistent with the evidence of record, he must make an express determination and detail specific reasons for the weight given the claimant's testimony. SSR 16-3p, 2017 WL 5180304, at *10; *Renstrom v. Astrue*, 680 F.3d 1057, 1066 (8th Cir. 2012). Further, "'for a claimant to show that his impairment matches a listing, it must meet all of the specified medical criteria.'" *Jones v. Astrue*, 619 F.3d 963, 969 (8th Cir. 2010) (quoting *Brown ex rel. Williams v. Barnhart,* 388 F.3d 1150, 1152 (8th Cir.2004) (internal quotations and citation omitted)).

Here, the ALJ found that Plaintiff's mental impairment did not meet or medically equal the criteria for listing 12.04. (Tr. 18) The ALJ also evaluated Plaintiff's statements regarding his symptoms and assessed Plaintiff's RFC. The ALJ addressed *Polaski* factors and made specific findings that Plaintiff's claimed symptoms were inconsistent with the record. (Tr. 19-23) Because these findings are supported by substantial evidence on the record as a whole, the Court must defer to the ALJ's determination. *Julin v. Colvin*, 826 F.3d 1082, 1086 (8th Cir. 2016).

Specifically, the record shows the ALJ properly considered the medical evidence and based the RFC determination on all of the evidence contained in the record. The ALJ found many of Plaintiff's symptoms relating to his bipolar disease and generalized anxiety disorder failed to rise to the level of significant anxiety, as the anxiety stemmed from situational stressors. (Tr. 17) Mental health providers made similar observations when Plaintiff discussed his finances or family issues. (Tr. 331, 338, 347, 349, 385, 387, 411). *See Gates v. Astrue*, 627 F.3d 1080, 1082 (8th Cir. 2010) (the ALJ's RFC determination was proper because the medical record supports the conclusion that depression was situational, related to martial issues, and improved with medication and counseling). Mental health providers also observed Plaintiff was alert and

13

oriented with good memory, had average intelligence with good judgment, and had a goal directed thought process. (Tr. 18, 315, 343, 411, 457, 500, 503).

Additionally, the ALJ determined Plaintiff's medications were helpful in treating his psychiatric impairments, with Plaintiff reporting he was "doing good", "feeling great", or "doing very well" on his medications. (Tr. 19) The record shows Plaintiff reported to mental health providers, including Drs. Vasireddy and Cunningham, he was doing well on the medication, was happier, and experienced better moods. (Tr. 312, 343, 408-09, 419, 460) "If an impairment can be controlled by treatment or medication, it cannot be considered disabling." *Brown v. Astrue*, 611 F.3d 941, 955 (8th Cir. 2010) (*quoting Brace v. Astrue*, 578 F.3d 882, 885 (8th Cir. 2009)); *see also Julin*, 826 F.3d at 1087 (evidence that medication was effective in relieving claimant's symptoms further supported the ALJ's finding that Plaintiff's complaints of disabling depression were not supported by the record).

Plaintiff contends the ALJ erred in affording greater weight to the medical expert, Dr. Carver, over the opinion of Dr. Cunningham, the consultative examiner. The ALJ's decision indicates the ALJ gave significant weight to Dr. Vasireddy's opinion, which failed to identify any functional limitations. (Tr. 24) Treatment records from Dr. Vaisreddy indicated only moderate functional limitations. (*Id.*) With respect to Dr. Cunningham, the ALJ noted the assessment also identified no more than moderate functional limitations. (*Id.*) The ALJ afforded great weight to Dr. Cunningham's opinion. (*Id.*) The ALJ noted Dr. Cunningham's opinion was consistent with medical expert Dr. Carver's opinion, other than Dr. Cunningham's finding of moderate limitations in social functioning. The ALJ then afforded greater weight to Dr. Carver's opinion that Plaintiff had only mild limitations in social functioning, as his opinion was based "upon a comprehensive review of the claimant's entire medical record." (*Id.*)

14

The record shows Dr. Cunningham found moderate impairments in Plaintiff's ability to make judgment on *complex* work-related decisions and to respond appropriately to usual work situations and to changes in a routine work setting. (Tr. 417, 419) (emphasis supplied). Dr. Cunningham opined in the Medical Source Statement ("MSS") that Plaintiff's problems would occur only when he was manic, hypomanic or severely depressed, but he had the capacity at other times to make good judgments. Dr. Cunningham also noted Plaintiff's medications were stabilizing the extreme moods, and Plaintiff may be able to perform work tasks as the medications help. (Tr. 415, 419) While Dr. Cunningham's mental evaluation of Plaintiff found he was unable to cope with typical mental/cognitive demands of basic work tasks or complete tasks in an acceptable time frame, the MSS completed after the evaluation found no limitations to understanding, remembering, and carrying out simple work-related instructions. (Tr. 417) Dr. Carver agreed, restricting Plaintiff to only simple, routine, and repetitive tasks. (Tr. 58)

Plaintiff argues the ALJ erred in failing to give great weight to Dr. Cunningham's opinion that Plaintiff was unable to meet the demands of basic work tasks or complete the tasks on time. However, the Court notes the ALJ did not entirely disregard the opinions of Dr. Cunningham, "but rather found that the medical evidence as a whole did not support a finding of disability." *Wiese v. Astrue*, 552 F.3d 728, 731 (8th Cir. 2009).

"It is the ALJ's function to resolve conflicts among the opinions of various treating and examining physicians." *Pearsall v. Massanari*, 274 F.3d 1211, 1219 (8th Cir. 2001). The ALJ may reject the conclusions of a medical expert if they are inconsistent with the record as a whole. *Id*. The Court notes a "[a] single evaluation by a nontreating psychologist is generally not entitled to controlling weight." *Teague v. Astrue*, 638 F.3d 611, 615 (8th Cir. 2011) (citation omitted). Moreover, an "ALJ is not required to accept every opinion given by a consultative examiner, however, but must weigh all the evidence in the record." *Mabry v. Colvin*, 815 F.3d

15

386, 391 (8th Cir. 2016). As set forth above, the ALJ thoroughly assessed the medical evidence and determined Dr. Carter's findings that Plaintiff could perform simple work tasks was consistent with Dr. Cunningham's MSS and Plaintiff's entire medical record. (Tr. 58-59, 24) Thus, the ALJ was entitled to give Dr. Carter's assessment greater weight than Dr. Cunningham's evaluation notes. *See Turner v. Colvin*, 621 F. App'x 865, 868 (8th Cir. 2015) (the ALJ did not err in discounting a medical opinion and giving greater weight to conflicting opinions that were more consistent with the remainder of the record).

The Court finds the ALJ also properly assessed Plaintiff's daily activities. The record shows Plaintiff stayed active, attending and chairing AA meetings, church services, and prayer group. He shopped once a week for a couple of hours, prepared meals, performed household chores, did laundry, took regular walks, and cared for his young son. (Tr. 258-60, 331, 346, 410, 415, 532, 536) Dr. Cunningham noted Plaintiff was able to take care of his personal hygiene, perform household chores, cook and prepare meals, shop autonomously, and participate in social activities such as AA and church. (Tr. 410) An ability to engage in a number of daily activities detracts from Plaintiff's allegations regarding the intensity and persistence of his symptoms. *See, e.g., Roberson v. Astrue,* 481 F.3d 1020, 1025 (8th Cir. 2007) (affirming the ALJ's analysis of claimant's subjective statement of symptoms where the claimant took care of her child, drove, fixed simple meals, performed housework, shopped, and handled money); *Goff,* 421 F.3d at 792 (stating that plaintiff was able to vacuum wash dishes, do laundry, cook, shop, drive, and walk, which was inconsistent with her subjective complaints and diminished the weight given to her testimony). These inconsistencies between subjective complaints and daily living patterns cast doubt on Plaintiff's disability claim. *See Julin*, 826 F.3d at 1087.

In sum, review of the record demonstrates the ALJ properly considered all the medical and nonmedical evidence in determining Plaintiff's RFC. The Court finds the ALJ thoroughly

16

discussed all the evidence of record, addressed the consistency of the evidence in the record when viewed as a whole, and properly assessed Plaintiff's RFC based on the relevant, reliable evidence of record. *Crawford v. Berryhill*, No. 4:18 CV 408 CDP, 2019 WL 1326669, at *5 (E.D. Mo. Mar. 25, 2019). Therefore, the RFC is supported by some medical evidence, and the Court will not disturb the ALJ's determination. *Id*.

### 2. The ALJ erred in relying on the VE's testimony

Plaintiff also argues substantial evidence does not support the ALJ's finding at step five because the ALJ erroneously relied on the flawed RFC when posing the hypothetical question to the VE. "A hypothetical question is properly formulated if it sets forth impairments 'supported by substantial evidence in the record and accepted as true by the ALJ.'" *Guilliams v. Barnhart*, 393 F.3d 798, 804 (8th Cir. 2005) (quoting *Davis v. Apfel*, 239 F.3d 962, 966 (8th Cir. 2001)). Further, where substantial evidence supports an ALJ's finding that a claimant's complaints are not supported by the record, the ALJ may properly exclude those complaints from the hypothetical question. *Id.* "If the hypothetical question is properly formulated, then the testimony of the VE constitutes substantial evidence." *Dow v. Colvin*, 174 F. Supp. 3d 1074, 1079 (E.D. Mo. 2016) (citation omitted).

Here, the hypothetical questions to the VE included Plaintiff's limitations that the ALJ found were supported by the evidence in the record and were consistent with the RFC determination. The ALJ found Plaintiff could perform the full range of work at all exertional levels but could perform no more than simple, routine, and repetitive tasks. (Tr. 18, 60) The VE testified Plaintiff could perform a number of unskilled jobs in the national economy including laundry worker, hand packager, and dining room attendant. (Tr. 25, 61). These limitations are consistent with medical and other evidence in the record and with the ALJ's RFC determination. Therefore, the undersigned finds "[t]he hypothetical was sufficient because it represented a valid

assessment of [Plaintiff's] . . . limitations consistent with the evidence in the record." *Davis*, 239 F.3d at 966. Because the VE was presented with a proper hypothetical, his testimony that a significant number of jobs existed which Plaintiff could perform despite his mental limitations constitutes substantial evidence supporting the ALJ's determination that Plaintiff was not disabled. *Guilliams*, 393 F.3d at 804. Thus, the Court finds the VE's testimony constitutes substantial evidence supporting the Commissioner's denial of Plaintiff's disability claim. *See Grable v. Colvin*, 770 F.3d 1196, 1202 (8th Cir. 2014) ("An ALJ may rely on a vocational expert's testimony as long as some of the identified jobs satisfy the claimant's residual functional capacity.")

## IV. Conclusion

When reviewing an adverse decision by the Commissioner, the Court's task is to determine whether the decision is supported by substantial evidence on the record as a whole. *Davis*, 239 F.3d at 966 (8th Cir. 2001). "Substantial evidence is defined to include such relevant evidence as a reasonable mind would find adequate to support the Commissioner's conclusion." *Id.* Where substantial evidence supports the Commissioner's decision, this Court may not reverse the decision merely because substantial evidence exists in the record that would have supported a contrary outcome or because another court could have decided the case differently. *Id*. *See also Buckner v. Astrue*, 646 F.3d 549, 556 (8th Cir. 2011); *Gowell v. Apfel*, 242 F.3d 793, 796 (8th Cir. 2001).

For the reasons set forth above, a reasonable mind can find the evidence of record sufficient to support the ALJ's determination that Plaintiff was not disabled. Therefore, the Court finds substantial evidence supports the ALJ's determination that Plaintiff was not disabled under the Social Security Act, and the Court affirms the decision of the Commissioner. *Davis,* 239 F.3d at 966.

Accordingly,

**IT IS HEREBY ORDERED** that that the decision of the Commissioner is affirmed, and Plaintiff Phillip Walsh's complaint is dismissed with prejudice.

A separate Judgment is entered herewith.

Dated this 13th day of September, 2019.

*E. Richard Webber*

E. RICHARD WEBBER
SENIOR UNITED STATES DISTRICT JUDGE